ETHEL M. STEVENSON & another[1] *vs.* WILLIAM H. PECKHAM.

Essex.     April 6, 1948. — May 7, 1948.

Present: QUA, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Conservator.*

A finding by a judge of probate, made in a decree granting a petition for the appointment of a conservator under G. L. (Ter. Ed.) c. 201, § 16, as appearing in St. 1945, c. 728, § 2, that the respondent, a man eighty-one years of age, was "incapacitated by reason of advanced age — mental weakness — to properly care for his property," was plainly wrong on evidence reported on appeal from the decree; and the decree was reversed and the petition ordered dismissed.

PETITION, filed in the Probate Court for the county of Essex on September 18, 1947.

The case was heard by *Phelan, J.*

*T. S. Bubier,* (*C. Ingram* with him,) for the respondent.
*W. E. Carey,* for the petitioners.

_____
[1] Irene M. Peckham.

DOLAN, J.   This case comes before us upon the appeal of the respondent from a decree entered by the judge of probate appointing a conservator of his property.   See G. L. (Ter. Ed.) c. 201, § 16, as appearing in St. 1945, c. 728, § 2.

The petitioners are the two living daughters of the respondent.   His other heirs apparent or presumptive are two sons and three grandchildren.   The evidence is reported, and at the request of the respondent the judge made a report of the material facts found by him which may be summed up as follows.   The respondent is eighty-one years of age. He was a contractor and builder up to ten years ago.   He then gave up building and did only odd jobs.   On April 1, 1940, he became unconscious as a result of a cerebral "spasm," was treated at a hospital and discharged as improved.   During the past few years he has slowed up a great deal and has earned no money from his own labors, although he has been physically well for a man of his years. He resides in Lynn and three of his children live in that city.   He has become dissatisfied with the conduct of his son James because of his use of liquor and has expressed dissatisfaction over his son-in-law's drinking habits.   He is opposed to the use of intoxicating liquors.   His wife died in 1918.   For about twenty years he has lived in the cellar of a bungalow on Reed Street, which he built himself.   The house is completed except for a few details and has been fit for occupancy, but has never been rented or occupied except by the respondent as just stated.   In the past year or two the cellar has become dirty, "the bed, table and dishes being filthy."   There are no sheets or pillow cases on the bed, and the respondent does his own cooking, except when neighbors bring cooked food to him.   One of his daughters has on a number of occasions brought food to him.   A Miss Lottie Hubley, who is fifty-five years of age, has lived on the same street as the respondent and for the past fifteen years has made it a practice to bring the respondent cooked food three or four times a week.   The real estate above mentioned is his only asset.   On June 4, 1947, it had a market value of $8,000 subject to a mortgage of $700.   On that date the respondent asked Miss Hubley for a loan to pay off the mort-

gage. In the latter part of June he visited a lawyer's office and stated that he wanted a deed drawn of the property to Miss Hubley as he was going to make a gift of the property to her. The deed was prepared and signed by the respondent on July 21, 1947, and was recorded on July 22, 1947. (The petition now before us was filed in the Probate Court on September 18, 1947.) No note was given to Miss Hubley, nor was any formal mortgage given by the respondent as security or otherwise. He still lives in the cellar of his house and receives old age assistance of $50 a month. The judge further found as follows: "I find that the ward intended to transfer the property as surety for the loan that the said Lottie Hubley made to him, and that said Lottie Hubley intends holding the property until her loan is paid, and then reconvey the same. . . . I find that the ward did not comprehend the nature, extent or effect of the transaction he entered into, nor did he comprehend the effect of the papers signed."

Other facts we find ourselves (*Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178) are these. The petitioner Mrs. Stevenson, who lived in Lynn, testified that during the past year or so she had noticed that the cellar where the respondent lived was very dirty, but she did nothing toward cleaning the room. She "had . . . [her] family." She asked him at times to live with her but he said he would not live with anyone. Mrs. Stevenson lived within a half mile of the respondent's house for three years until recently. In 1947 she sent food to him on four occasions but none after she found out that he had conveyed the property to Miss Hubley.

Miss Peckham, the other daughter of the respondent, is unmarried and lives with Mrs. Stevenson. She has visited her father every two or three weeks, and testified that the cellar where he lived was always dirty. She also testified that he was a "man who doesn't want his children or anybody else to interfere with his business," that he had "always handled his own business affairs." The respondent's daughters and his son James did not give any financial aid to the respondent, but it is a fair inference from the evidence not only that they were not financially able to do

so but also that the respondent did not seek or desire such aid, and that he chose to live his own life, and that he did so. The whereabouts of the respondent's son Ralph have been unknown for the last two or three years.

The respondent testified at length. His testimony was coherent and responsive, particularly clear as to his financial affairs through many years, and discloses no impairment of his mental faculties. He stopped working at his trade because he "got petered out pretty quick, couldn't hang on all day long, that's all," but "can do a job now just the same." In the last five years he earned $150 or $200 doing light jobs. He lives in the basement of the bungalow he built. It contains six or seven rooms. He started to build the house about twenty years ago. There is still something to do. The room that he lives in is known as the laundry. He testified that he kept the place clean. He has a gas stove and kitchen range and ice chest. Sometimes neighbors bring in some food, but outside of that he does his own cooking. He heats the cellar by a hot water boiler. He shuts the radiators off in the upper part of the house. The rooms there are plastered; hardwood floors are laid but not finished. The wiring for lights is pretty much done. On January 26, 1929, the respondent borrowed $1,000 from a savings bank and gave a mortgage on the property as security. He paid $100 on account of the principal of the loan on November 22, 1946, $100 on account thereof on February 27, 1947, and $100 more on May 22, 1947. He made payment of the interest due thereon promptly down to June, 1947. The bank officials wrote to him on December 17, 1946, requesting that he paint the trim on the house. He paid no attention to that letter, but when he received a second letter from them on June 2, 1947, to the same effect he borrowed $700 from Miss Hubley in order to pay the loan from the bank. She gave him that sum in cash and he paid the balance of the mortgage loan given by the bank on June 5, 1947. The bank on that date executed and gave to the respondent a discharge of the mortgage and returned to him the mortgage note. He gave the deed of the premises to Miss Hubley in order to

be sure that her $700 was safe and intending that the conveyance should be security for the loan, and Miss Hubley took the conveyance as security for her loan to the respondent and upon the understanding that when it was paid she was to reconvey the property. The judge so found.

General Laws (Ter. Ed.) c. 201, § 16, as appearing in St. 1945, c. 728, § 2, provides as follows: "If a person by reason of advanced age or mental weakness is unable to properly care for his property, the probate court may, upon his petition or upon the petition of one or more of his friends, or if a person by reason of physical incapacity is unable to properly care for his property the probate court may, upon his petition or with his written assent, and in each case if after notice as provided in section seventeen and after hearing it appears that such person is incapable of properly caring for his property, appoint a conservator to have charge and management of his property, subject to the direction of the court."

There is no evidence in the present case to support a finding that the respondent is incapable of transacting his own affairs by reason of any physical disabilities due to advanced age. The petitioners properly do not so contend. And upon all the evidence we are of opinion that it cannot be concluded rightly that he is incapable of caring for his property by reason of any mental weakness. There was no medical testimony to that effect. So far as the "cerebral spasm" which he suffered about eight years ago is concerned, the evidence (the hospital record) discloses that the respondent was taken to the hospital on April 1, 1940, and was discharged on April 6 of the same year with the notation "It is sure that there was no hemorrhage but a severe spastic occlusion of brain vessels for a certain time." He has clearly understood his financial obligations to the bank and has discharged them promptly. He has lived frugally and it is a fair conclusion that he had to do so, that since his retirement he has provided for himself without financial aid from others, other than old age assistance, keeping his one possession, his house, unencumbered except for the small loan negotiated with the bank almost twenty years ago, reducing

that debt in 1946 and 1947 out of his slender means, and in the meantime promptly meeting the interest payments due. It cannot be said rightly that, in negotiating the loan in question from Miss Hubley when the bank was pressing him to make repairs, he was acting in an improvident manner or one significant of mental weakness. He was prompted by a desire to be free from the requirements of the bank. That that be accomplished speedily was his reason for not delaying the payment of its loan and for making the seemingly outright conveyance of the property to Miss Hubley without waiting for the formalities of having a new mortgage prepared and executed. He has "adequate and sufficient . . . wholesome food." There was evidence that there was never any incoherency or wandering in his talk, and that there had not been a particle of change in his mentality through the years. There was no evidence of any mental peculiarities or loss of memory on the part of the respondent. That he lives as has been described does not justify a conclusion that he is mentally incapacitated to care for his property. Assuming that the evidence would support a finding that he is careless about his housekeeping, and that certain conditions in the room in which he lives are dirty, yet this, weighed in the light of all the other evidence, we think does not justify a conclusion that the respondent is "unable to properly care for his property" by reason of advanced age or mental weakness. See *Johnson* v. *Talbot*, 255 Mass. 155, 157–158; *Taylor* v. *Callahan*, 265 Mass. 582, 584.

The judge apparently based his finding, contained in the decree entered by him, that the respondent was "incapacitated by reason of advanced age — mental weakness — to properly care for his property," upon the evidence of the conditions in which the respondent was living and more particularly upon the transaction in which he conveyed his house to Miss Hubley. It is to be observed, however, as pointed out before, that the judge immediately after finding in his report of facts "that the ward intended to transfer the property as surety for the loan that the said Lottie Hubley made to him, and that said Lottie Hubley intends holding the property until her loan is paid, and then recon-

vey the same," found in conclusion as follows: "the ward did not comprehend the nature, extent or effect of the transaction he entered into, nor did he comprehend the effect of the papers signed." It is difficult to reconcile these findings. On all the evidence we are of opinion that the first finding was right, and that the second finding was plainly wrong, and that the finding contained in the decree entered by the judge that the respondent is incapacitated "by reason of advanced age — mental weakness — to properly care for his property" is not supported by the evidence and is also plainly wrong.

*Decree reversed.*
*Petition dismissed.*